UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:20-cv-10102-JLK/Becerra

ALFREDO MORALES MOLINA,

    Petitioner,

v.

ASHLEY MOODY, ATTORNEY GENERAL
OF THE STATE OF FLORIDA,

    Respondent.
_____/

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254[1]

THIS CAUSE is before the Court upon Petitioner Alfredo Morales Molina's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Petition") with Memorandum in Support thereof (the "Memorandum") challenging his conviction following a jury verdict and resulting sentence for fleeing or attempting to elude a law enforcement officer by vessel, entered in Monroe County Circuit Court, Case No. 2016-CF-000186-A-P. ECF Nos. [1], [3]. The State of Florida (the "Respondent") filed its Response to Order to Show Cause (the "Response"), ECF No. [8], as well as a Notice of Filing Index to Appendix, ECF Nos. [9], [9-1]. Petitioner filed a Reply. ECF No. [10]. Upon review of the Petition, ECF No. [1], the Memorandum, ECF No. [3], the Response, ECF No. [8], the Petitioner's Reply, ECF No. [10], and the governing law, for the reasons stated below, the undersigned **RECOMMENDS** that the Petition be **DENIED**.

---

[1] This matter was referred to the undersigned by the Honorable James Lawrence King for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters pursuant to 28 U.S.C. § 636. *See* ECF No. [5].

I. PROCEDURAL HISTORY AND INSTANT MOTION

On September 4, 2016, Petitioner was arrested while "lobstering in the Card Sound Lobster Sanctuary." ECF No. [4] at 15. On September 13, 2016, Defendant was charged with (1) molesting, taking or trapping spiny lobster in a sanctuary, in violation of FAC 68B-11.003 (2 M), and (2) fleeing or attempting to elude a law enforcement officer by vessel, in violation of Florida Statute 843.18 (3 F). *Id.* at 17.

A trial began on June 1, 2018 (the "First Trial). *See id.* at 130. Alexander Diaz (the "State Witness"), a Florida Fish and Wildlife Commission investigator, was the sole witness. ECF No. [8] at 2. On direct examination, the State Witness testified regarding the stop and arrest of Petitioner. *See* ECF No. [4] at 159–171. On direct examination, the State Witness explained that he was in the process of stopping another vessel when he "observed a very familiar boat and operator coming into the creek" which was Petitioner's vessel. *Id.* at 162. The State Witness also testified that he was "familiar with [Petitioner] that he's a commercial lobster fisherman in the area." *Id.* The State Witness testified that he observed Petitioner in the water "with a mask on" and after initiating pursuit of the vessel, saw Petitioner's brother dump lobster out of a bucket back into water. *Id.* at 167, 170.

On cross examination, Defense counsel asked about the State Witness' testimony that he recognized Petitioner, and the State Witness testified regarding a prior arrest of Petitioner:

> Q: But while you intercepted that group, you testified that you recognized my client, who is a commercial lobster fisherman --
>
> A: Yes.
>
> Q: -- pass by in his boat, correct?
>
> A: Correct.
>
> Q: Okay. And at that point, he's done nothing illegal, right?

> A: No.
>
> Q: Nothing suspicious about him being in the water on his vessel with he and his brother?
>
> A: Well, he's a commercial bully-net lobster fisherman. They usually go out at night. They don't bully-net during the day. So him being in that area of the sanctuary where, actually, I have written -- I've had an encounter with him and have written him in 2011 for that.

*Id.* at 172–73.  Following this testimony, the trial judge held a sidebar with counsel for both sides, wherein the State prosecutor informed the Court that he had "talk[ed] to [the State Witness] about talking about [Petitioner's] prior history." *Id.* at 173.  Outside the presence of the jury, the State Witness confirmed to the court that the prosecutor had instructed him not to testify to prior contact with the Petitioner. *Id.* at 174.  The Court granted Petitioner's motion for a mistrial, finding that Defense counsel did not invite error, but rather the State Witness volunteered the information concerning prior contact with Petitioner. *Id.* at 174–76.

Petitioner thereafter filed a Motion to Dismiss based on Double Jeopardy. *Id.* at 64–67. Petitioner assets that said motion "was denied orally by the trial court at a proceeding held July 31, 2018, although there is no Clerk's notation to that effect on the Court Minutes of that date." ECF No. [3] at 3.  Petitioner renewed his motion (collectively with the first motion, the "Motions for Dismissal Based on Double Jeopardy Grounds") on November 13, 2018.  ECF No. [4] at 74. The Court again denied the motion.  *Id.*

The second trial was conducted the next day, on November 14, 2018.  *Id.* at 75.  The Court granted Petitioner's Motion for Judgment of Acquittal as to Count 1, taking crawfish in the Biscayne Sanctuary.  *Id.* at 90.  A jury convicted Petitioner of Count 2, fleeing or attempting to elude a law enforcement officer by vessel. *Id.* at 75, 93, 286.  Petitioner received a sentence of ten days in the Monroe County Sheriff's Office Jail and three years of probation, with a special condition that he not enter Monroe County waters. *Id.* at 75, 102–04.

Petitioner appealed to the Third District Court of Appeal, arguing that the trial court's denial of Petitioner's Motions for Dismissal Based on Double Jeopardy Grounds was error, as Petitioner was forced to request a mistrial due to the State Witness' misconduct as the testifying officer. *See* ECF No. [9-1] at 9–31. The Third District Court of Appeal *per curiam* affirmed the convictions and sentences in a decision without written opinion. *See Molina v. State*, 303 So. 3d 212 (Fla. 3d DCA 2020) (3D18-2493), *review dismissed*, SC20-1174, 2020 WL 4668086 (Fla. Aug. 11, 2020). Petitioner filed a Motion for Rehearing, Request for a Written Opinion, Request for Certification of Issue of Great Public Importance, and Motion for Rehearing En Banc, which were denied on July 14, 2020, without written opinion. ECF No. [9-1] at 104.

Thereafter, Petitioner filed a Notice to Invoke the Discretionary Jurisdiction of the Florida Supreme Court pursuant to Fla. R. App. P. Rule 9.120, which was dismissed by the Florida Supreme Court on August 11, 2020 on the grounds that the Third District Court of Appeal did not issue a written opinion. *Id.* at 98–100.

In the instant Petition and Memorandum, Petitioner argues that the State court erred in denying his Motions to Dismiss on Double Jeopardy Grounds. *See* ECF No. [3]. Specifically, Petitioner contends that he is entitled to an exception barring retrial due to the prosecutor's and/or testifying law enforcement officer's intent to provoke a mistrial, evidenced by the officer's testimony concerning Petitioner's prior history. *Id.*

## II.     ANALYSIS[2]

The court's review of a state prisoner's federal habeas corpus petition is governed by the

---

[2] Respondent concedes that the Amended Petition was timely filed. ECF No. [8] at 7. Because Respondent has explicitly waived the statute of limitations defense, this Court need not determine whether the waiver is accurate. *See* 28 U.S.C. §2244(d)(1)–(2); *Wood v. Milyard,* 566 U.S. 463, 473 (2012) (citing *Day v. McDonough,* 547 U.S. 198, 210-11 (2006)). As such, the Petition is timely. In addition, pursuant to 28 U.S.C. § 2254(b)–(c), petitioners must exhaust their claims

Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016). The AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *See Greene v. Fisher,* 565 U.S. 34, 38 (2011) (quotation marks and citation omitted); *Ledford,* 818 F.3d at 642.

"Under § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Lumpkins v. Sec'y Dep't of Corr.*, 449 F. App'x. 879, 883 (11th Cir. 2011) (citing 28 U.S.C. § 2254(d)). Indeed, under the AEDPA, "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011). In other words, the Court cannot grant relief unless Petitioner can show that "no fairminded jurist could agree with that [state] court's decision." *See id.*

---

before presenting them in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1). "[T]o properly exhaust a claim, the petitioner must fairly present[] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen,* 605 F.3d 1114, 1119 (11th Cir. 2010) (*per curiam*) (citation and quotations omitted). Petitioner has exhausted his claim as he sought review from the Florida Supreme Court prior to filing the instant federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1); *Mason,* 605 F.3d at 1119. Indeed, Respondent concedes that Petitioner's claim is exhausted. ECF No. [8] at 10, 16–17.

5

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lumpkins*, 449 F. App'x. at 883 (internal quotations omitted) (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)). For purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). Moreover, "[u]nder AEDPA, we accord a presumption of correctness to a state court's factual findings." *Mason v. Allen*, 605 F.3d 1114, 1118–19 (11th Cir. 2010).

"The Supreme Court repeatedly has admonished that 'the petitioner carries the burden of proof' and that the § 2254(d)(1) standard is 'a difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Id*. (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398, (2011)). Indeed, the Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *See Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019). Moreover, the state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington,* 562 U.S. at 100; *Meders,* 911 F.3d at 1351 (citation omitted); *see also Lee v. Comm'r, Alabama Dept. of Corr.*, 726 F.3d 1172, 1212 (11th Cir. 2013) (quoting *Johnson v. Williams,* 568 U.S. 289, 300–01 (2013) (the United States Supreme Court has cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy

caseload shouldered by many appellate courts, "opinions issued by these courts must be read with that factor in mind").

Petitioner brings this habeas petition arguing that the State court erred in dismissing his Motions to Dismiss on Double Jeopardy Grounds, resulting in a violation of his Fifth Amendment rights. Under the Fifth Amendment, no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Accordingly, the Double Jeopardy Clause protects a criminal defendant from facing repeated prosecution for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (citing *United States v. Dinitz,* 424 U.S. 600, 606 (1976)). Generally, when a defendant moves for a mistrial such that he "himself has elected to terminate the proceedings against him," the principles of Double Jeopardy do not apply, and there is no bar to retrial. *Id.* at 672. However, there is an exception, known as the "*Kennedy* Exception" to this general rule, which provides that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, [] does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675–76. The Supreme Court further clarified what kind of conduct would constitute such intent, holding that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676. Indeed, it is not enough that the government acted with malintent—the government must have desired a mistrial, specifically. *See Miller v. Sec'y, Dept. of Corr.*, No. 6:09-CV-304-ORL, 2010 WL 5174491, at *3 (M.D. Fla. Dec. 15, 2010) (finding the *Kennedy* Exception inapplicable where, "[e]ven if the State acted improperly . . . there is no indication that the State's motive was to obtain a mistrial or to save a losing case, that a mistrial would have benefitted the State in any way

whatsoever, or that the State desired a mistrial" but rather "the State's motive clearly was to introduce evidence that established Petitioner's guilt in order to win the case") (citing *Robinson v. State,* 574 So. 2d 108, 112 (Fla. 1991)).

Additionally, courts have declined to find other government actors' intent and misconduct, as opposed to a prosecutor's, sufficient to satisfy the *Kennedy* Exception's "intent to goad" requirement. See *U.S. ex rel. Clauser v. McCevers*, 731 F.2d 423, 431 (7th Cir. 1984) ("[T]he prosecutor engaged in no misconduct and the intentional or negligent wrongdoing of the police [witnesses] can neither be attributed nor imputed to the prosecutor."); *United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994) ("We need not address the issue of whether or not the improperly conducted arrest rises to the level of official misconduct on the part of the arresting officers because we have no reason to attribute those actions to the federal prosecutor in this case" as "there is absolutely nothing in the record to suggest that the prosecutor intended an improper arrest.").

To be sure, the *Kennedy* Exception is a narrow one. See *Kennedy*, 456 U.S. at 673. In *United States v. Tamarit*, the Eleventh Circuit Court of Appeals affirmed a finding that the second trial was not barred by Double Jeopardy, where the petitioner argued that the prosecutor "intentionally violated a ruling *in limine* prohibiting testimony about [petitioner's] prior 'marijuana grows.'" 394 Fed. App'x. 649, 651 (11th Cir. 2010). The district court determined that the government acted negligently in "failing to 'properly instruct[ ] its witnesses and [was] careless in its questioning'" but nevertheless found that a second trial was not barred on Double Jeopardy grounds. *Id.* The Eleventh Circuit affirmed, noting that the prosecutor interrupted the first witness that sought to comment on the petitioner's past history, and that the government apologized and sought a curative instruction when the second witness referenced the petitioner's prior history. *Id.* The Eleventh Circuit held that "[t]he record does not suggest that 'the Government actually

8

*intended* to provoke a mistrial.'" *Id.* (citing *United States v. Shelley,* 405 F.3d 1195, 1200 (11th Cir.2005) (emphasis in original).

Petitioner argues that the *Kennedy* Exception applies in his case, and that the State court thus erred in denying Petitioner's Motions for Dismissal Based on Double Jeopardy Grounds. ECF No. [3] at 7–18. Specifically, Petitioner argues he is entitled to relief on two grounds. First, Petitioner argues that the law enforcement officer that testified as to Petitioner's prior criminal activity at the first trial had "clear intent to advise the jury that the Defendant had a prior arrest for taking crawfish in Biscayne Sanctuary" and that "the principal State's law enforcement witness *intended* to provoke a mistrial." *Id.* at 8, 12 (emphasis in original). Petitioner argues that the State court panel "overlooked the fact that the Assistant State Attorney's ('ASA') preparatory questions to the Officer on direct examination was in-fact the *nexus* between the conduct of the ASA and the officer, and was what prompted the Officer to go the next very short step and allude to the fact that he had previously written up [Petitioner]." *Id.* at 5. Petitioner also notes that the State Witness' testimony was in "response to an otherwise innocuous question during the defense cross-examination." *Id.* at 8. Petitioner also argues that the State Witness "intentionally and knowingly slipped [in the prior arrest testimony] regardless of the fact that he was specifically instructed by the [ASA] during pretrial witness preparation not to [do so]." *Id.* at 5. Yet at the same time, Petitioner notes that "it could not be said that the prosecutor was negligent or careless in failing to instruct his witness." *Id.* at 12. Nevertheless, Petitioner argues that the ASA and the State Witness knew that the prior history testimony would cause a mistrial and that the ASA "intentionally maneuvered [] questioning . . . knowing of the likelihood that the defense attorney would ask a question to give the Officer the opportunity to testify about [the prior arrest]." *Id.* at 9. Accordingly, Petitioner contends that "the lead-up questions by the ASA . . . constituted

9

prosecutorial misconduct by setting-the-stage and creating a slippery-slope leading to the prohibited testimony of [the State Witness]" and that the ASA's questioning and the State Witness' resulting testimony "should be considered as one-and-the-same act of the prosecution." *Id.*

Second, Petitioner argues in the alternative that the State Witness' misconduct should be imputed to the ASA. *Id.* at 16–18. Petitioner reincorporates and reiterates his arguments concerning the State Witness' intentional prohibited testimony in spite of instructions from the ASA. *See id.* Moreover, in his Reply, Petitioner alleges that the State Witness' testimony was motivated by a desire for seizure of Petitioner's boat, which is a possible consequence of a conviction of Count One, for which Petitioner was acquitted. ECF No. [10] at 6–8. Petitioner asserts that a determination that the State Witness' testimony "was not 'intentional conduct' would be 'clearly erroneous.'" *Id.* at 3 (citing *Robinson v. Wade*, 686 F.298, 309 (5th Cir. 1982)). Additionally, Petitioner argues that *State v. Scurry*, supports his argument. ECF No. [3] at 13. In *Scurry*, the court instructed the parties not to refer to the defendant's prior trial, and the government communicated that instruction to its witnesses. 933 So. 2d 565, 566 (Fla. 1st DCA 2006). Contrary to the government's instruction, a witness referred to the previous trial while being cross-examined by defense counsel. *Id.* The First District Court of Appeal determined that the witness was "obviously confused" and "innocently committed the very error she was trying to avoid" which "falls far short of intentionally goading the defendant into requesting a mistrial." *Id.* According to Petitioner, the case at bar is different because the State Witness is "a seasoned law enforcement officer with many years' experience in presenting testimony at trial [and he] knowingly and intentionally violated the instruction." ECF No. [3] at 13–14 (emphasis removed). Petitioner contends that the State Witness' improper testimony "was intended to . . . force defense counsel to request a mistrial" and clearly was an "attemp[t] to persuade the jury why he was 'suspicious' of

10

[Petitioner]." *Id.* at 15.

Respondent argues that the State court's determination that the State Witness' testimony did not constitute intentional government misconduct is "a finding of fact which [shall] not be disturbed unless it is clearly erroneous." ECF No. [8] at 10 (citing *Robinson v. Wade*, 686 F.2d 298, 309 (5th Cir. 1982)). Respondent notes that Petitioner's claim of the ASA's misconduct "appear[s] to stem from the entire direct examination by the prosecutor as he fails to point to any specific words that would constitute this trap that he alleges goaded him to move for a mistrial." *Id.* at 11. However, according to Respondent, the State Witness' testimony on direct examination was consistent with the ASA's opening statement and that the State Witness merely testified that he was "familiar with that he's a commercial lobster fisherman in the area." *Id.* at 11–12.

In addition, Respondent argues that Petitioner's reliance on *Kennedy* is misplaced because there, the prosecutor brought up the defendant's prior criminal history when asking questions on direct examination, and even there the court determined the prosecutor did not intend to cause a motion for mistrial. *Id.* at 13–14. Respondent contends that "[t]here is nothing on the record that shows that the prosecutor intentionally instigated the witness to make a prejudicial reference to Petitioner's prior in order to obtain a more favorable opportunity to convict Petitioner," particularly considering that the State Witness confirmed that the ASA has instructed him as to the impermissibility of Petitioner's prior history. *Id.* at 15. As to Petitioner's argument that the ASA's direct examination questions were the "nexus between the conduct of the ASA and the Officer," Respondent notes that Petitioner cites to no law in support of this notion and that Respondent's argument is nonsensical because he argues "that by telling the officer not to speak of Petitioner's prior encounters, the prosecutor was intentionally prompting him to mention the very thing he told him not to." *Id.* at 15–16. Respondent thus argues it was not error for the State court to deny the

11

Motions to Dismiss Based on Double Jeopardy Grounds since "the record is devoid of any intent on the part of the prosecutor to 'provoke' Petitioner into moving for mistrial." *Id.* at 16.

Respondent likewise contests Petitioner's claim that the State Witness' conduct should be imputed to the ASA. Respondent asserts that "there are 'no cases . . . supporting the . . . position that [a witness's] alleged misconduct, standing on its own, should be used as a proxy for a showing of prosecutorial intent. Indeed, other courts have explicitly rejected that argument.'" *Id.* at 17 (citing *United States v. Parton*, 104 F.3d 361 (6th Cir. 1996)). Respondent cites to various cases in support of its argument, such as *Rogers v. Goord*, 371 F. Supp. 2d 348 (W.D.N.Y. 2005). Respondent notes that in *Rogers*, the court found that the "prosecutor's question was 'carelessly crafted,'" but nevertheless rejected the argument that the officer's behavior should be imputed to the prosecutor, since the prosecutor's question "'did not call for an improper response by the officer [and] even if the prosecutor neglected in his pre-trial preparation of the officer to warn that [such testimony] was impermissible' . . . the record did not reflect . . . that the prosecutor's actions were deliberate." *Id.* at 18–19 (quoting *Rogers*, 371 F. Supp. 2d at 355). Respondent argues that "it was defense counsel's questioning that led to the mistrial. The prosecutor in no way intended to provoke a mistrial." *Id.* at 19. Thus, Respondent argues that Petitioner fails to demonstrate that the State court's decision was unreasonable. *Id.*

In order to qualify for habeas relief here, Petitioner must establish either that the State court's denial of Petitioner's Motion to Dismiss on Double Jeopardy Grounds was "contrary to" or an "unreasonable application of" clearly established law, or that the State court's decision was based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d). As an initial matter, even though the State trial court denied Petitioner's Motions for Dismissal Based on Double Jeopardy Grounds without written opinion, and the Third District Court of Appeal affirmed

without written opinion, such decisions are still entitled to deference. *See Meders,* 911 F.3d at 1351. Indeed, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As discussed below, the undersigned finds that Petitioner is not entitled to relief here because the State courts' rulings were neither "contrary to" nor an "unreasonable application of" *Kennedy*, nor an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d).

### A. The State Court's Finding That The Prosecutor Did Not Intend To Goad Was Not Contrary To, Nor An Unreasonable Application Of, Clearly Established Law, Nor An Unreasonable Factual Determination.

Petitioner's argument that the ASA's questioning on direct examination constitutes intent on the part of the prosecutor to goad Petitioner into moving for a mistrial has no merit. First, Petitioner fails to show that the State court's decision was the result of an unreasonable application of *Kennedy*. Indeed, far from requiring such a conclusion on this record, *Kennedy* and its progeny support a finding that such innocuous conduct by the prosecutor falls well below the necessary showing of intent to cause a mistrial. There is nothing in the record to suggest that the prosecutor sought to induce Petitioner into moving for a mistrial. Indeed, the State trial court asked the prosecutor whether he had instructed the State Witness not to testify concerning Petitioner's past history, and both the ASA and the State Witness confirmed that he had. Further, the prosecutor's questions did not lead to the witnesses' testimony—it was the questioning of Petitioner's counsel. Petitioner fails to provide any controlling law to show that a prosecutor's questions, which arguably invited further questions from defense counsel, shows intent to induce a mistrial. Petitioner fails to meet his high burden in demonstrating that the *Kennedy* exception was improperly applied to his case.

Second, Petitioner fails to show that the State court's factual findings were unreasonable. Notably, "[t]he prosecutor's intent is a question of fact." *Rutherford v. Crosby*, 385 F.3d 1300 (11th Cir. 2004) (citing *United States v. Vallejo,* 297 F.3d 1154, 1162 (11th Cir. 2002)); *see also Hawkins v. Alabama*, 318 F.3d 1302 (11th Cir. 2003) ("Goading conduct is a material fact treated by the Supreme Court as necessary for the *Kennedy* rule . . . to apply."). Although there was no written decision, the State court ruled on Petitioner's Motions to Dismiss on Double Jeopardy Grounds after asking both the prosecutor and the testifying officer about the prosecutor's instructions to the witness, and clearly credited the prosecutor's response. *See Fugitt v. Lemacks*, 833 F.2d 251 (11th Cir. 1987) (noting that the "state trial judge held an evidentiary hearing on [defendant's double jeopardy claim based on prosecutorial misconduct and] [a]fter hearing all the evidence the trial judge made no explicit findings, but denied the motion, thus implicitly crediting the prosecutor's explanations for his actions"). The State court factual findings are entitled to deference, and Plaintiff fails to offer clear and convincing evidence that the prosecutor intended to goad Petitioner into moving for a mistrial. *See Mason*, 605 F.3d at 1118–19 (citing § 2254(e)(1)).

> **B. The State Court's Finding That The Testifying Officer's Conduct Did Not Constitute Government Intention To Goad Was Not Contrary To, Nor An Unreasonable Application Of, Clearly Established Law, Nor An Unreasonable Factual Determination.**

Petitioner argues that that the State Witness intended to goad Petitioner into moving for a mistrial and his conduct should be imputed to the prosecutor. First, Petitioner offers no controlling law that requires such a conclusion. Although *Kennedy* sets forth a clear standard concerning *prosecutorial* intent to induce a mistrial, *Kennedy* provides no such guidance concerning a government *witnesses*' alleged intent, and so it cannot have been an unreasonable application of federal law for the State court to find that the *Kennedy* exception did not apply to Petitioner's case.

14

Second, in support of his argument, Petitioner merely asserts that the State Witness "is a seasoned law enforcement officer with many years' experience in presenting testimony at trial" who "knowingly and intentionally violated the [prosecutor's pre-trial] instruction" and he "knew exactly what he was doing in sabotaging the trial when he believed it was not going well for the State." ECF No. [3] at 14 (emphasis removed). Thus, Petitioner relies on his argument that, for some reason, the testifying officer thought the trial was going poorly and so a mistrial was needed. However, such a "bald assertion is insufficient to rebut the presumption of correctness attached to the [factual] finding of the state court." *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006). Likewise, although in his Reply, Petitioner attempts to offer a motive for such alleged intent on the part of the State Witness, namely that his testimony was motivated by a desire for seizure of Petitioner's boat, this claim is speculative, conclusory, self-serving and insufficient to grant him any relief.

Finally, Petitioner's attempt to compare and distinguish *Scurry* is not helpful to his argument. While Petitioner argues that the State Witness differs from the witness in *Scurry* because the State Witness here intended to provoke a mistrial whereas the *Scurry* witness' testimony was an innocent error, the *Scurry* court's reversal and remand, based on a determination that the witness lacked the intent to goad the defendant into a mistrial, says nothing about the propriety of imputing a witness' conduct onto that of the prosecutor. *See Scurry*, 933 So. 2d at 566. In short, Petitioner here offers nothing more than a conclusory argument that the witness intended to cause a mistrial and that such conduct should be imputed to the prosecutor. On this record, no such conclusion could be reached and the State court did not err in finding the same.

Given this record, the State court's rejection of Petitioner's claim was not error. Indeed, this is not a situation where clearly established Supreme Court precedent was violated, nor where

Petitioner can offer clear and convincing evidence why the factual application is incorrect. The court's findings are entitled to deference and should not be disturbed here.

### III.  CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability issue. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000) and *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this Court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Judge pursuant to the Objections section below.

### IV.  RECOMMENDATIONS

Based upon the foregoing, it is **RECOMMENDED** that the Petition, ECF Nos. [1], [3] be **DENIED**; and a certificate of appealability be **DENIED**.

V.      **OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. The undersigned finds that a shortened objection period is appropriate given Petitioner's upcoming sentence. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE and ORDERED** in Chambers on March 25, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**